IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CALLISTA YOUNG, INDIVIDUALLY, and as NEXT FRIEND to K.Y., a minor child | § § § § | |
| V. | § § | NO. 1:19-CV-00175-LY |
| MITSUBISHI MOTORS CORPORATION and MITSUBISHI MOTORS NORTH AMERICA | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant Mitsubishi Motors Corporation's Motion to Dismiss For Lack of Personal Jurisdiction (Dkt. No. 8), the Response (Dkt. No. 10) and Reply (Dkt. No. 13); Plaintiff's Objections to Mitsubishi's Evidence in Support (Dkt. No. 11) and Mitsubishi's Response (Dkt. No. 12); Plaintiff's Objections to Mitsubishi's Evidence (Dkt. No. 14) and Mitsubishi's Response (Dkt. No. 15). The District Court referred the above to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

### I. BACKGROUND

Callista Young and K.Y. were traveling in Young's 2016 Mitsubishi Outlander in Cedar Park, Texas in March, 2018 when another vehicle collided with their vehicle. K.Y. sustained serious injuries in this crash. Young sues Mitsubishi Motors Corporation (MMC) and Mitsubishi Motors North America (MMNA) for product liability, negligence, and misrepresentations related to the manufacture, design, testing, and marketing of the Outlander they were riding in. MMC is

incorporated in Japan with its principal place of business in Japan. It designs and manufactures Mitsubishi vehicles and ships them to the United States at the Los Angeles port of entry where it sells them to MMNA.

MMC contends the Court does not have personal jurisdiction over it because it is incorporated and has its principal place of business in Japan, and has no contact whatsoever with Texas. It alleges that its only contact with the U.S. occurs when it delivers vehicles to MMNA in California. MMC argues that it therefore does not have sufficient minimum contacts with Texas to allow the Court to exercise personal jurisdiction over it. MMC also contends that litigating the case in Texas would offend notions of fair play and substantial justice in that it would require MMC to litigate across the globe from its offices in Japan.

Young responds that the Court may exercise specific jurisdiction over MMC, because it introduced its cars into the U.S. stream of commerce, and was well aware that its cars were sold in Texas. Young also contends that MMC and MMNA are the same company or that MMNA is at least an agent of MMC, and thus MMNA's act of shipping the car to San Antonio is enough to subject MMC to personal jurisdiction in Texas. She also challenges the notion that litigating in Texas would offend fair play and substantial justice because MMC is a large company which frequently travels abroad.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "It is well established that where the district court rules on a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff

may bear his burden by presenting a prima facie case of jurisdiction." *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996) (citations omitted).

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The Texas long-arm statute extends to the limits of due process. *Id.* To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston*, 523 F.3d at 609.

"A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011). The Supreme Court has suggested that, for a corporation, general jurisdiction is only to be found where the corporation is incorporated, or had its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear.* at 919 (citation omitted). The Fifth Circuit frames the specific jurisdiction issue with a three-step analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff is successful, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth*, 472 F.3d at 271. The main question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear,* 564 U.S. at 919 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Supreme Court recently stated that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). For contacts with a state to subject a party to suit there, the contacts must be "contacts that the *'defendant himself'* creates with the forum State." *Walden*, 134 S.Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis added). The principles and limits of jurisdiction "principally protect the liberty of the nonresident defendant—not the convenience of the plaintiff[ ] or third parties." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). The "plaintiff cannot be the only link between the

4

defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

A defendant may also be found to have minimum contacts with a forum sufficient for a court to exercise personal jurisdiction if the defendant sent products to the forum state through the stream of commerce. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 111-12 (1987); *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). The *Asahi* court was unable to reach a majority; some courts follow the O'Connor plurality opinion, requiring more than mere awareness of the goods in the forum state on the part of the defendant in order to exercise personal jurisdiction, and some courts follow the Brennan concurrence, requiring mere awareness of the product in the forum state. *See Dillard v. Fed. Corp.*, 321 F.Supp.3d 752, 756-57 (W.D. Tex. 2018). The Fifth Circuit has made clear that the defendant's delivering the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state is enough of a basis to find minimum contacts sufficient for the exercise of personal jurisdiction. *Ainsworth*, 716 F.3d at 177. In *Ainsworth*, the foreign defendant sold products to an exclusive dealer who marketed in all fifty states and sold about 200 units in the forum state. *Id*. at 179. The court found personal jurisdiction to be proper, reasoning that even though the defendant did not have specific knowledge of sales in the forum state, it reasonably could have expected such sales given the size of the market in the forum state. *Id*.

### III. OBJECTIONS TO THE EVIDENCE

Young objects to and moves to strike statements found in paragraphs 13, 16, 17, 19, 20, 22, and 23 of the declaration of Hideki Ebata, General Manager of Mitsubishi Motor Corporation's Legal Department (Dkt. No. 8, Ex. A). Young also objects to and moves to strike paragraph 5 of the

declaration of Jorgen Wetterings, who is the Assistant General Counsel and Director of Legal Affairs for Products for Mitsubishi Motors North America. (Dkt. No. 8, Ex. B). Young also objects to MMC's new evidence, filed in support of its Reply, which is an additional Declaration from Wetterings. Dkt. No. 13-2.

Young objects on the grounds that (1) the statements in Ebata's declaration found in paragraphs 13, 16, 17, 20, 22, and 23 are not based on personal knowledge; (2) these statements along with those in paragraph 19 lack truth or are easily controverted by other evidence; (3) that there were no documents attached to Wetterings' Declaration to support the assertion that Wetterings had reviewed relevant documents to make his declaration; (4) that Wetterings's assertion that MMC did not ship the vehicle to Texas is controverted by the Car-Fax report; and (5) the evidence attached to MMC's Reply Brief is untimely new argument and should be disallowed as a result.

MMC maintains that the objections based on a lack of personal knowledge are baseless, arguing that both Ebata and Wetterings began their respective declarations with a statement that their declarations were based on personal knowledge. MMC further argues that both Ebata, as the General Manager of MMC's Legal Department, and Wetterings, as Assistant General Counsel for MMNA, would have had personal knowledge of the statements made in their declarations through their roles in the company. MMC also contends that the evidence is not controverted and that Young misconstrues or misapplies documents to create inconsistencies. Finally, as to the evidence attached to the Reply Brief, MMC argues that it is a clarification of a prior argument and not a new argument.

"To be sufficient to put the contested facts in issue, affidavits submitted in support of or in opposition to motions to dismiss for lack of jurisdiction must comply with the requirements of Fed. R. Civ. P. 56 [(c)(4)]; *i.e.*, they must be made on personal knowledge, set forth such facts as would

be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." *Source Network Sales & Marketing, LLC v. Ningbo Desa Elec. Mfg. Co., Ltd.*, No. 3:14–CV–1108–G, 2015 WL 2341063, at *9 (N.D. Tex. May 15, 2015) (citing *Thompson v. Chambers*, 804 F.Supp. 188, 191 (D. Kan. 1992). "Neither legal conclusions nor statements made without personal knowledge are capable of being so presented." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (citing FED. R. EVID. 602, 701, 702). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." FED. R. EVID. 602. Personal knowledge can be satisfied based on the individual's stated position within a company and statement that he had personal knowledge of the facts so stated. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 541 n.13 (5th Cir. 2002), overruled on other grounds by *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009).

Young objects to statements made in paragraphs 13 and 16 in Ebata's declaration that "MMC does not, however, design vehicles specifically directed to consumers located in Texas" and "MMC does not market, distribute, or sell Mitsubishi vehicles, including the subject Outlander . . . to dealers or the general public in the United States" on the grounds that the statements are conclusory, not based upon personal knowledge, and easily controverted by other evidence, specifically MMC's "Drive for Growth," "New Stage 2016," and "Corporate Social Responsibility Report." *See* Pls. Objections to MMC's Evidence, Dkt. No. 11, at 2; Pls. Resp. to MMC's Mtn., Dkt. No. 10, Exs. B, C, D.

In paragraph 1 of his declaration, however, Ebata swore that "[he has] personal knowledge of the matters set forth herein, and if called upon to do so, [he] could and would competently swear

thereto." Decl. of Hideki Ebata, Dkt. No. 8, Ex. A, at 1. Additionally, as the General Manager of the Legal Department, Ebata could ostensibly have such knowledge as it would be required should a claim like the current one ever arise. Moreover, Young never addresses the argument as to what Ebata would know based on his role in the company—in effect conceding it. As such, and per *Diamond*, the personal knowledge requirement is met as to the statements in paragraphs 13 and 16 because Ebata swore to his knowledge thereof and ostensibly would have such knowledge as a result of his position within Mitsubishi. For the same reasons, the personal knowledge requirement is met for the remainder of Ebata's statements at issue.[1]

Mr. Wetterings likewise swore that his declaration was based upon his personal knowledge and that he reviewed documents related to the claim. Decl. of Jorgen Wetterings, Dkt. No. 8, Ex. B, at 1. Additionally, as the assistant general counsel for MMNA, he is likely to have knowledge in much the same area as Mr. Ebata has at MMC. As such, and considering his statement that he reviewed documents related to the claim at hand, his statement that the vehicle was sold by MMNA to Enterprise RAC is based on his personal knowledge. *See id*.

While true that legal conclusions are not competent evidence, simply because the affiants are attorneys does not make turn their factual statements into legal conclusions. Statements need to be supported by facts in order to be competent evidence, and a person's employment provides evidence as to what that person is competent to attest to. *See Marshall*, 134 F.3d at 324. In *Marshall*, a nurse

---

[1] In paragraph 17 Ebata testified to contractual relationships, clearly within the purview of someone in the legal department; in paragraph 19 he testified to sales in Texas, quite similar to 13 and 16; paragraphs 20 and 22 address much the same issue (where the sale took place and MMC's involvement thereafter); his statement in paragraph 23 concerning an agency relationship between MMC and MMNA is also ostensibly within the purview of the head of the legal department–its status as a legal conclusion will be addressed *infra*.

submitted an affidavit in support of Marshall, who claimed that the Hospital had denied her appropriate medical screening procedures. *Id*. The nurse's affidavit contained statements that other patients with symptoms similar to Marshall's had received more testing than Marshall had. *Id*. The Court upheld the lower court's striking of said statements as conclusory because they did not provide any substantiating evidence as to who the other patients were, and the Court doubted that, as a nurse, the affiant could competently compare symptoms between patients. *Id*.

Young seeks to strike a number of statements of fact, claiming they are legal conclusions. Pls. Objections to MMC's Evid., Dkt. No. 11, at 2-6 (objecting to statements such as: "MMNA . . . sold the Outlander"; "MMC did not influence or control the vehicle's disposition after delivering the vehicle [to California]"; "MMC does not distribute, market, or sell Mitsubishi vehicles"). Ebata's and Wetterings's statements concern facts the men ostensibly could have known as part of their employment and are not legal conclusions unsupported by material facts. They are admissible. Ebata's statement concerning agency, however, necessarily raises legal questions. The fact that he is in the legal department does not absolve him of the need to provide something more than a legal conclusion unsupported by concrete and particular facts to competently state his position. Here, as in *Marshall*, there was no substantiating evidence as to why MMNA is not an agent of MMC, just a bald statement that it was not. Ebata's statement in paragraph 23 is conclusory and should be stricken (though it has no effect on the Motion to Dismiss given the fact that the Court need not reach that argument).

Young objects to and moves to strike Ebata's statements in paragraphs 13, 16, 17, 19, and 23 as lacking in truth and veracity or easily controverted. *See, e.g.*, Pls. Objections to MMC's Evid., Dkt. No. 11, at 3. Ebata's statements in paragraphs 13, 16, 17, and 19 concern MMC's supposed lack

9

of direct contact with Texas. Young objects that some of MMC's corporate documents include references to increasing sales throughout the United States, necessarily implying contact with Texas. This Court is not convinced that Ebata's statements are lacking in truth or easily controverted by other evidence. For example, the documents Young relies on do not specifically mention Texas, so it is impossible to say that they directly contradict Ebata's statement. Furthermore, it is entirely possible for the Outlander to have ended up in Texas without direct contact with Texas on the part of MMC. In fact, the evidence submitted thus far seems to point to this.

Young objects to and moves to strike the evidence attached to MMC's Reply Brief in support of its Renewed Motion to Dismiss for Lack of Personal Jurisdiction. *See* Pls. Objections to Reply Brief, Dkt. No. 14; MMC's Reply, Dkt. No. 13. Young claims that the evidence is new evidence and therefore new argument, barred by local rule 7(f)(1) and *Spears v. United States*, 5:13-CV-47-DAE, 2014 WL 3513203, at *9 (W.D. Tex. July 14, 2014) (citing *Springs Indus., Inc. v. Am Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991) (holding that a reply brief should contain argument, not new supporting materials)).

7(f)(1) grants a party the opportunity to file a reply in support of its motion and bars further submissions absent leave of court. Local Rule CV-7(f)(1). MMC is right to point out that 7(f)(1) bars additional submissions beyond the reply and not, as Young suggests, the attachment of evidence to the reply. *See id*. Moreover, although the reply is meant to contain argument and not new supporting materials, per *Spears* and *Springs*, MMC's attachment—a new declaration by Wetterings—is a continuation of the same argument the parties engaged in between the original motion and the response: whether and to what extent MMC has contacts with Texas. The supporting declaration merely further addresses Young's argument vis-a-vis the various websites NHTSA, and a supposed

plant in Irving, Texas. MMC's Reply, Dkt. No. 13, Decl. of J. Wetterings, at 1-2. Additionally, both the *Spears* and *Springs* courts allowed the materials in. Replies should contain argument concerning the issues at hand, including those raised in the Response. MMC's Reply complies with this general standard and the local rules of this Court.

Based upon the foregoing, the undersigned **OVERRULES** and **DENIES** Plaintiff Callista Young's Objections to and Motions to Strike Defendant Mitsubishi's Evidence in its Motion to Dismiss (Dkt. No. 11) as to paragraph 5 of Wetterings's declaration (Dkt. No. 8, Ex. B) and paragraphs 13, 16, 17, 19, 20, and 22 of Ebata's declaration (Dkt. No. 8, Ex. A); and Plaintiff's Objection to and Motion to Strike Mitsubishi's Evidence Attached to its Reply Brief (Dkt. No. 14). The undersigned further **OVERRULES** Plaintiff's objections to and motion to strike paragraph 23 of Ebata's declaration (Dkt. No. 8, Ex. A) as **MOOT**.

## IV. ANALYSIS

MMC is headquartered and incorporated in Japan. Under *Daimler* and *Goodyear*, this Court cannot exercise general personal jurisdiction over this company because it is not essentially "at home" in Texas. *See Goodyear*, 564 U.S. at 919. Through her silence, Young concedes this point. Instead, Young argues that MMC delivered its products into the stream of commerce in California to an exclusive and wholly-owned subsidiary dealer with the expectation that they would be shipped to other states—the goal being to increase sales throughout the United States. Pls. Resp. to MMC's Mtn., Dkt. No. 10, Ex. C, MMC's Annual Report 2018 at 5, 8-9, 11. As in *Ainsworth*, there is quite likely more than 200 units at issue here; Young has estimated the number of units sold in Texas to be in the thousands. And MMNA markets throughout the United States. Pls. Resp. to MMC's Mtn., Dkt. No. 10, Ex. A, MMC's Facts & Figures, Export Shipments by Region p. 11. On these facts,

MMC must have been aware that its products were being sold in Texas and could reasonably anticipate being haled into court in Texas. The minimum contacts prong is met.

MMC relies heavily on the argument that "the defendant's conduct must create the connection with the forum state; attenuated contacts or the unilateral activity of a third party is not enough" to establish minimum contacts. *Ainsworth*, 716 F.3d at 177 n.11. MMC claims that it is not subject to personal jurisdiction in Texas because its contacts with the product ended in California and that all further contact was between MMNA, the local dealers, and the plaintiff. This argument falls flat, however, in that the MMC/MMNA relationship is not an attenuated one. MMNA is a wholly-owned subsidiary of MMC and does business throughout the United States. It is quite logical that MMNA does business in Texas—and substantial business at that—considering the size of the Texas auto market. Moreover, MMC must have expected its products to end up in Texas when it delivered them to MMNA, its nation-wide distributor, as its stated goal is to increase sales throughout the United States. The rule in the Fifth Circuit only requires awareness that the product will end up in Texas, and the evidence before the Court demonstrates that awareness. MMC's position that it targeted the United States as a whole also fails, as targeting the U.S. as a whole is not inconsistent with targeting Texas. *See J. McIntyre Machinery, Ltd. v. Nicastro* 564 U.S. 873, 905-06 (2011) (Ginsburg, J., dissenting).

MMC even goes a step further and argues that *Ainsworth* has been impliedly limited by *Dillard*; that there must be at least some direct contact between the defendant and forum state in order to find personal jurisdiction in a stream of commerce case because such circumstances existed in *Dillard*. Once again, it is incorrect, as the court in *Dillard* explicitly noted that federal courts in Texas adhere to the looser stream of commerce analysis derived from Justice Brennan's opinion in

*Asahi. Dillard*, 321 F.Supp.3d at 756-57. And though the defendant in *Dillard* happened to have direct contacts with Texas, that was not a determinative fact, and the *Dillard* court explicitly adhered to the looser stream of commerce rule, and rejected the stricter Justice O'Connor-derived analysis. *Id*. Further, *Ainsworth* itself was a case in which the defendant had no direct contact with the forum state. There is no requirement that MMC have had direct contact with the state of Texas in order for a court to exercise personal jurisdiction over it under a stream of commerce analysis.

With the minimum contacts prong met, the second prong follows in this case. MMC availed itself of the market in Texas through the stream of commerce, and its product was involved in an accident within Texas. Accordingly, Young's cause of action arises out of or results from MMC's contacts with Texas. *See Bustos*, 538 F. App'x 565, 567 (5th Cir. 2013); *Dillard*, 321 F. Supp. 3d at 759-60. MMC disagrees, relying on the Supreme Court's recent decision in *Bristol-Myers*. Its reliance is misplaced, however, in that *Bristol-Myers* concerned non-resident plaintiffs who had never ingested the drug in question in California, were not prescribed in California, did not purchase the drug in California, and, most importantly, were not injured in California. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, ___ U.S.___, 137 S.Ct. 1773, 1781 (2017). The Court in *Bristol-Myers* denied jurisdiction over these non-resident plaintiffs because there was no "adequate link" between the State and their claims. *Id*. Here, Young was injured in Texas as a result of MMC's contacts with Texas through the stream of commerce. The relatedness prong is met with injury in the forum state because the injury would not have occurred but-for the defendant's contacts. *See Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 231 (5th Cir. 1995); *Dillard*, 321 F.Supp.3d at 760.

The fair play and substantial justice prong is also met. While true that forcing MMC to litigate in Texas is a high burden, "these concerns cannot overwhelm other factors." *Dillard*, 321 F.Supp. at 761. In *Dillard*, the court held that although requiring the foreign defendant to litigate in Texas was a burden, it did not offend traditional notions of fair play and substantial justice because other factors outweighed the burden and the burden itself has been reduced in recent years by ease of international travel and communication. *Id*. The court specifically focused on Texas' interest in adjudicating a dispute where the injured parties were Texans, the plaintiff's interest in obtaining relief in Texas rather than Taiwan, and the increased efficiency of resolving the dispute where the wreckage was. *Id*. at 761-62. Here too, Texas has a substantial interest in adjudicating this case because the injury occurred in Texas, a fact absent even in *Dillard*. MMC has the resources to travel here, and Young likely does not have the resources to try the case in Japan. It would also be more convenient and efficient to try the case in Texas because a substantial portion of the evidence and witnesses are in Texas.

## V. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Mitsubishi Motors Corporation's Motion to Dismiss Under Rule 12(b)(2).

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within

fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 25th day of November, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE